## VERNIE A. LINDELL v. CHARLES A. LINDELL AND MARY LINDELL.[1]

November 18, 1921.

No. 22,338.

**Finding of possession of land sustained by evidence.**

1. A finding that plaintiff was in possession of land, which was the subject matter of an action to determine adverse claims, is sustained by the evidence.

**Equitable lien sustained by findings — advances by parent expended in improvements by son.**

2. The facts found and related in the opinion entitled defendant to claim an equitable lien on the land to secure the repayment of money advanced to his son and used to pay for improvements which enabled plaintiff to enforce a claim to the land by virtue of an oral gift from defendant to the son to whose rights plaintiff has succeeded. It is not indispensable to such a lien that it is founded on a contract indicating an intention to create it. It may arise from an application of the maxim that he who seeks equity must do equity whether it could or could not

[1] Reported in 185 N. W. 929.

have been enforced in an action brought to establish it, if defendant's right to assert it grows out of the controversy before the court, is connected with the subject matter thereof, and is presented in the pleadings and proof.

Action in the district court for Goodhue county to quiet title by one in possession. The substance of the complaint and of the answers is given in the third and fourth paragraphs of the opinion. The case was tried before Johnson, J., who made findings, as stated in the fifth paragraph of the opinion, and ordered judgment in favor of plaintiff. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*A. J. Rockne,* for appellants.

*F. M. Wilson* and *T. R. Johnson,* for respondent.

LEES, C.

This is a sequel to Lindell v. Lindell, 135 Minn. 368, 160 N. W. 1031. The plaintiff here was the defendant in that action and Charles A. Lindell was plaintiff. The action was one in ejectment, defended on the ground that an oral gift of the land in question had been made by Charles A. Lindell to his son Sidney Lindell, who was defendant's husband and had died intestate, leaving her as his sole heir at law. It was held that such a gift had been made and that the donee had taken possession of the land and made permanent improvements thereon, and therefore ejectment would not lie. The Yale Law Journal, Vol. 26, p. 592, contains an interesting comment on the case.

The present action was brought on the theory that, since Charles A. Lindell had the record title to the land, and his wife, who was joined as a party defendant, was not a party to the previous action, they were adverse claimants whose rights, if any, could be barred by an action to determine their claims to the land.

The complaint alleged the making of the gift, its acceptance, the making of substantial improvements in reliance thereon, the death of the donee, plaintiff's succession to his rights by virtue of the law of descent and her continued possession of the land. The complaint also

alleged that she had requested defendants and they had refused to execute a written relinquishment of any apparent claim they might have to the land in order that the cloud on plaintiff's title might be removed, and concluded with a prayer that defendants be adjudged to have no estate or interest in or lien upon the land and that plaintiff be declared to be the owner in fee.

The answer of the defendant Mary Lindell was a general denial. The answer of the defendant Charles A. Lindell alleged, among other things, that he had furnished $3,000 to his son to pay the cost of the buildings he had erected on the land, that it was so used, and in equity and good conscience plaintiff ought not to be permitted to obtain full title without repaying the money so advanced.

The trial court found that Sidney had borrowed $650 from his brother Arthur, giving him his note therefor signed by their father as a joint maker; that he had also borrowed $800 from his father, giving him his individual note therefor, and that the money borrowed had been used to pay for materials and labor furnished in constructing the buildings which Sidney had erected. It was also found that there was no contract between Sidney and his father, which gave the latter a right to claim a lien on the land as security for the money so borrowed; that after Sidney's death the $650 note was filed and allowed as a claim against his estate and a dividend of 13.31 per cent and no more paid thereon, his estate being insufficient to provide for the payment in full of all claims filed against it. The conclusion of the trial court was that defendants had no interest in or lien on the land. In a memorandum the learned trial judge said "it must be conceded that it would be nothing out of the way for the daughter-in-law to reimburse Charles A. Lindell for the money he loaned to Sidney and to make him whole on the liability he incurred in signing Sidney's note to Arthur," but that a general creditor has no lien, equitable or otherwise, upon any specific property of the debtor, unless it is based on some express or implied contract or some relation like cotenancy, or where there is a showing of bad faith or fraud. The correctness of this conclusion presents the principal question in the case. Defendants moved for judgment notwithstanding the order and decision of the trial court, and, if that was

denied, for a new trial, and have appealed from an order denying the motion in all respects.

Before disposing of the principal question, reference should be made to some other features of the case of minor importance.

1. Defendants' contention that plaintiff failed to show that she was in the possession of the land when she brought her action cannot be sustained. The court found that she had possession and the finding is sustained by the evidence.

2. All questions relating to the rights of the defendant Mary Lindell have become unimportant, for the reason that since the appeal was taken she has died, and hence her inchoate rights in the land have been extinguished.

3. The principal question in the case is not free from doubt.

The books abound in statements that an equitable lien exists when there is a contract, express or implied, sufficiently indicating an intention to make some particular property a security for a debt or other obligation, as, for example, where the owner of the property promises to transfer it as security for his debt but neglects to do so. However, the existence of such a contract is not an indispensable element of an equitable lien. It may arise wholly from considerations of right and justice and the application to particular facts of the maxims which lie at the foundation of equitable jurisprudence. 3 Pomeroy, Eq. Jur. § 1238; 17 R. C. L. p. 605. One of the most familiar of these maxims is that he who seeks equity must do equity. The principle thus expressed governs the courts in administering all kinds of equitable relief in any controversy where its application may be necessary to work out complete justice. 1 Pom. Eq. Jur. § 385. The consensus of opinion appears to be that the rule only applies where the plaintiff invokes the aid of a court to obtain some form of equitable relief, and where, but for the operation of the rule, he would be entitled to the relief he demands. It is agreed that under the operation of the rule the defendant may be awarded equitable relief which he could not have secured in an independent suit brought to obtain it. 1 Pom. Eq. Jur. § 386.

The rule does not apply where the relief sought by the plaintiff and the equitable right claimed by the defendant belong to or grow out of

two entirely separate and distinct matters or transactions. Defendant's right to relief must be connected with the subject matter of the suit. His adverse equity must grow out of the very controversy before the court or out of such transactions as the record shows were part of its history, or where it is so connected with the cause in litigation as to be presented in the pleadings and proofs, with full opportunity afforded to the plaintiffs to explain or refute the charges. 1 Pom. Eq. Jur. § 387; 1 Story, Eq. Jur. § 75; 21 C. J. 177; 10 R. C. L. p. 395; Comstock v. Johnson, 46 N. Y. 615; Cuthbertson v. Morgan, 149 N. C. 72, 62 S. E. 744; Otis v. Gregory, 111 Ind. 504, 13 N. E. 39; Bourgeois v. Risley Real Estate Co. 82 N. J. Eq. 211, 88 Atl. 199. There are some cases laying down a broader rule, but they are not in accord with the weight of authority. See 1 Pom. Eq. Jur. pp. 721, 722; 21 C. J. p. 176, note 39 (b).

In applying the maxim a court is invested with no arbitrary discretion, that is, a judge may not impose conditions which in his individual opinion would work substantial justice between the parties. Plaintiff may only be required to do that which fixed legal principles make it his duty to do. 10 R. C. L. pp. 394, 395; 21 C. J. pp. 176, 177; Cuthbertson v. Morgan, supra; Alexander v. Schaffer, 38 Neb. 812, 57 N. W. 541; Finch v. Finch, 10 Oh. St. 501.

We think the undisputed facts bring this case within the application of the principle expressed in the maxim. The subject matter of the litigation is the land. Plaintiff claims it by virtue of the parol gift to her husband. His father had retained the record title and it was a cloud on the title her husband acquired by the gift and to which she had succeeded. To remove the cloud she invoked the equitable powers of the court. To secure the court's aid she was obliged to plead and prove that her husband made improvements on the land. It appeared that the improvements were paid for in part with money furnished by the donor of the land. The right she is asserting sprung from the transactions with which the furnishing of the money was directly connected. It would be contrary to right and justice to permit plaintiff to assert a title based on the making of improvements partly paid for with money furnished by the defendant Charles A. Lindell, while refusing to rec-

ognize his claim for the repayment of the money as a condition precedent to the establishment of her title to the land. Under the findings of fact we hold that the defendant Charles A. Lindell was entitled to claim an equitable lien on the land to secure the repayment of the money advanced to his son Sidney on the notes mentioned in the findings.

The order appealed from is reversed and the case remanded for further proceedings in accordance herewith.

On December 23, 1921, the following opinion was filed:

PER CURIAM.

Respondent asks for a rehearing to argue the question of whether appellants' lien could attach to land which was the homestead of Sidney Lindell.

The trial court found that after their marriage on October 15, 1913, Sidney and the respondent resided in the dwelling house he constructed on the land. There were no buildings on it in 1911. It did not become a homestead until the house was built and Sidney began to occupy it. That date is not determined by the findings. The evidence indicates that it was about four weeks prior to his marriage. The money had been advanced and the lien attached long before. There is no proof that the land was a homestead before the loans were made. The question suggested in the petition does not arise upon the record before us.

Petition denied.